IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION FILE |
| v. | ) | |
| | ) | NO. 1:13-CR-0206-JEC-ECS |
| TYRONE BROOKS, SR., | ) | |
| | ) | [Magistrate Judge Baverman] |
| Defendant. | ) | |

**O R D E R**

Tyrone Brooks, Sr., appeared on May 22, 2013, before the undersigned for an initial appearance and arraignment on an indictment charging him with mail and wire fraud and filing false tax returns. [Docs. 1, 7]. Roy E. Barnes appeared as counsel on behalf of Brooks at the arraignment and made a motion for the Court to appoint additional counsel to represent Brooks because Brooks could not afford counsel and Mr. Barnes was representing Brooks *pro bono*. The motion was denied without prejudice to Brooks filing a motion seeking to appoint counsel. [Doc. 7].

On May 29, 2013, Brooks filed the motion to appoint counsel that is presently pending before the Court. [Doc. 10]. In his motion, he also seeks authorization for expenses under the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"). The government requested and was granted an opportunity to oppose the motion, which opposition it timely filed. [*See* Dkt. Entry 05/31/2013; Doc. 14]. For the following reasons, the

AO 72A
(Rev.8/82)

motion to appoint counsel and for CJA expenses is **GRANTED IN PART AND DENIED IN PART**.

### *Contentions of the Parties*

Brooks contends that he is entitled to appointment of additional counsel because Mr. Barnes is representing him *pro bono*. He states that Mr. Barnes has volunteered his services to date. However, he argues, the case will be complex, time-consuming, and lengthy due to the period of time covered by the indictment and the voluminous discovery to review. He notes that his volunteer lawyer is primarily a civil practitioner who also has a number of civil trials in the Georgia state courts already scheduled to be tried this summer and fall. In addition, Brooks claims he will need to employ expert witnesses in jury composition (to assist him in challenging the grand jury that indicted him), in forensic accountancy, and in the operation of small not-for-profit organizations. [Doc. 10 at 3-5].

The government opposes the motion, arguing that Brooks is not entitled to court-appointed counsel under the CJA because he has secured the volunteer services of Mr. Barnes, who has practiced law for almost forty years, is an experienced and well-known lawyer who previously served as a prosecutor and Governor of Georgia, and who has not indicated that he will withdraw if additional counsel is not appointed.

2

As a result, the government argues, Brooks is "not 'financially unable to obtain adequate representation.' " [Doc. 14 at 3 (quoting 18 U.S.C. § 3006A)]. In short, the government argues that Brooks's financial condition has not impeded his ability to obtain counsel in any way, and as a result, he has not shown that he qualifies for court-appointed counsel under the CJA. [*Id.* at 4].[1] It thus contends that a court is not authorized under the CJA to appoint counsel for a defendant who is represented by a volunteer lawyer, and that an insufficient showing has been made as to entitlement to expense reimbursement under the CJA. [*Id.* at 5-7]. The government also contends that this case is not, as Brooks alleges, an extremely difficult case other than the expected length of the trial, and even if it is, the difficulty can be offset by the use of CJA funds to hire experts. [*Id.* at 8-9]. The government also suggests that due to the financial value of Barnes's services and the potential confusion and disruption that may be caused by dual representation by multiple lawyers, Brooks must choose whether to be

---

[1] The government also notes that in April 2012, Brooks retained Mr. Barnes after Brooks was contacted by federal investigators, and paid Mr. Barnes $5000. [Doc. 14 at 3 n.1]. However, the government does not point to this payment as proof that Mr. Barnes has been adequately compensated to represent Brooks, nor has the government argued that Brooks is otherwise financially able to pay to retain a lawyer.

3

represented by Mr. Barnes on a volunteer basis or have the Court appoint him a lawyer. [*Id.* at 9-10].

Next, the government argues that while Brooks has a right under the CJA to seek funds to cover litigation expenses, independent of his right to court-appointed counsel, he has not yet made an adequate showing that such expenses are necessary to his defense. [*Id.* at 11].

Finally, the government points out that Mr. Barnes has been identified as general counsel for the Georgia Association of Black Elected Officials ("GABEO"), which is one of the named victims alleged in the indictment, [*id.* at 12-13], and therefore Mr. Barnes might have a conflict of interest in representing Brooks, although such potential conflict could be waived. [*Id.* at 14].

*Discussion*

The Sixth Amendment provides that an accused in a criminal prosecution has a right to the assistance of counsel. The Supreme Court has recognized that the Sixth Amendment requires that where a defendant is financially unable to retain counsel, the trial court must appoint counsel to represent him. *See Argersinger v. Hamlin*, 407 U.S. 25 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 339-40 & n.3 (1963) (discussing that prior to making the Sixth Amendment's counsel guarantee applicable

4

to the States via the Fourteenth Amendment, federal courts construed the Sixth Amendment to require that "counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived" in federal felony prosecutions) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)); *see also Gideon*, 372 U.S. at 344 (recognizing "an obvious truth" that "any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him"); *Birt v. Montgomery*, 725 F.2d 587, 592 (11th Cir. 1984) (en banc) (stating that Sixth Amendment right to counsel has four components: right to have counsel, minimum quality of counsel, a reasonable opportunity to select and be represented by chosen counsel, and right to preparation period sufficient to assure minimum-quality counsel).

The CJA, codified at 18 U.S.C. § 3006A, implemented the constitutional right to counsel. *United States v. Sarsoun*, 834 F.2d 1358, 1361 (7th Cir. 1987). The CJA provides that "the United States magistrate judge or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him." 18 U.S.C. § 3006A(b). The CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided *pro bono*." *United States v. Diaz*, 802 F. Supp. 304,

307 (C.D. Cal. 1992) (further noting that "[t]he spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially *pro bono* nature") (quoting *United States v. Carnevale*, 624 F. Supp. 381, 383 (D.R.I. 1985)). In addition, the CJA authorizes attorneys to be reimbursed for expenses reasonably incurred in the representation, 18 U.S.C. § 3006(A)(d)(1), and establishes that investigative, expert, or other services, if "necessary for an adequate defense," must be provided to a defendant financially unable to pay for them himself, *id.* § 3006A(e)(1); *see also United States v. Williams*, 616 F.2d 759, 762 (5th Cir. 1980) (per curiam).[2]

Before addressing Brooks's requests and the government's opposition, the Court notes that two issues are not in dispute. First, in the absence of volunteer counsel, Brooks qualifies for assignment of court-appointed counsel under the CJA. The CJA does not state any economic requirements for "financially unable to obtain counsel." *United States v. Gonzalez*, No. 1:06-cr-351-WSD, 2007 WL 3407627, at *2 (N.D. Ga. Oct. 30, 2007) (Duffey, J.); *United States v. Ellis*, 154 F.R.D. 697, 699 (M.D. Fla. 1997). In evaluating a defendant's request to come under the CJA, the Court's task is to determine the defendant's financial ability to obtain counsel "after

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

appropriate inquiry." 18 U.S.C. § 3006A(b); *see also* 7 Administrative Office of the United States Courts, Guide To Judiciary Policy, Defender Services § 210.40.30 (a)(1) (2013) ("A person is 'financially unable to obtain counsel' within the meaning of 18 U.S.C. § 3006A(b) if the person's net financial resources and income are insufficient to obtain qualified counsel. In determining whether such insufficiency exists, consideration should be given to . . . the cost of providing the person and his dependents with the necessities of life . . . ."). Similarly, the Northern District of Georgia's Criminal Justice Act Plan ("CJA Plan") sets forth procedures for appointing attorneys for "financially eligible" criminal defendants, but does not set forth any specific guidelines for financial eligibility. The CJA Plan states only that "[t]he determination of eligibility for representation under the CJA is a judicial function to be performed by a district or magistrate judge after making appropriate inquiries concerning the person's financial condition." N.D. Ga. LCrR, App. D. at § IV.D.1.

Moreover, financial inability to obtain counsel is not "complete indigency." *Ellis*, 154 F.R.D. at 699. An "appropriate inquiry" into the defendant's financial circumstances has been defined by binding Circuit authority as "a full inquiry in the manner of *Jackson v. Denno* . . . into the financial ability of the defendant to obtain counsel." *Wood v. United States*, 387 F.2d 353, 354 (5th Cir. 1967). The "procedure

7

varies with the circumstances and no one method is required." *Ellis*, 154 F.R.D. at 699; *see also United States v. Barcelon*, 833 F.2d 894, 897 & n.5 (10th Cir. 1987) (in determining whether the defendant has met this burden and demonstrated financial inability, the court takes into account such factors as the defendant's assets and liabilities, his income and expenses, the needs of defendant and his family, the potential cost of the defendant's representation, funds given to the defendant by others for limited purposes only, the existence of hidden assets, availability to the defendant of income earned by a spouse or from some other source, and the credibility of the defendant's representations as to his financial affairs). The CJA is designed to allow the Court to err on the side of appointment. *Gonzalez*, 2007 WL 3407627 at *2.

Although the Court was aware that Brooks would appear at his initial appearance and arraignment with Mr. Barnes and that the government was consenting to Brooks's pretrial release on bond, the Court required Brooks to be interviewed by the District's Pretrial Services Office. The financial affidavit prepared as a result of that interview and signed by Brooks under penalty of perjury demonstrated that he only has his Georgia Legislature salary as a source of funds to pay for a lawyer, while he has living expenses approaching or exceeding that salary, with no other substantial assets that

8

could be converted into cash to hire a lawyer. As a result, Brooks is financially eligible for counsel and investigative or other expert services under the CJA.

The second undisputed issue is that the government's opposition to Brooks's motion is not based on Brooks's financial eligibility for court-appointed counsel, but rather on the fact that Mr. Barnes has volunteered to represent Brooks, and thus Brooks is not being deprived of the constitutional guarantee as established by *Gideon*.

Thus, Defendant's motion turns on what is meant by the term "financially unable to obtain counsel," as described in § 3006A. Both the government's argument and the Court's initial skepticism of Brooks's request are reasonably based on the eminently logical premise that the CJA is not implicated in a non-capital case when, regardless of the defendant's financial condition, he is able to secure the willing assistance of competent counsel to represent him on a volunteer basis. Despite the superficial attractiveness of such a conclusion, however, the Court believes that such reasoning ignores the true underpinning of the CJA, which requires the Court to determine whether a defendant has the ability to pay for a lawyer. *See* 18 U.S.C. § 3006A(a)(1)(A) ("Representation *shall* be provided for any financially eligible person who . . . is charged with a felony.") (emphasis supplied); *Ellis*, 154 F.R.D. at 699 ("A fundamental prerequisite for court appointed counsel is

defendant's *inability to hire* an attorney. A person who *has the financial resources to obtain counsel* has no right to court appointed counsel.") (citation omitted) (emphasis supplied); *see also United States v. Gravatt*, 868 F.2d 585, 591 (3d Cir. 1989) ("An individual who has the *financial resources* to obtain counsel does not have a right to a court-appointed attorney.") (emphasis supplied).

The Court has not found, and has not been directed to, any cases discussing the entitlement to CJA counsel where an otherwise CJA-qualified defendant has a volunteer lawyer.[3] There are practical and jurisprudential reasons for the dearth of discussion of this issue. Practically speaking, after passage of the CJA, volunteering to represent a criminal defendant in a federal criminal case on a *pro bono* basis is a rare, if not extinct, practice. This is not surprising; in light of the complexity of many of the financial fraud cases prosecuted in federal court and the consequences of a federal felony conviction, mounting an adequate defense requires the expenditure of significant

---

[3] The Court notes that *Loyd v. Whitley*, 29 F.3d 1171 (5th Cir. 1994), a case reviewed in the course of the Court's own research, is not instructive. There, the lawyer represented a death penalty habeas petitioner *pro bono* in both state and federal habeas proceedings. After the representation was concluded, counsel applied for court appointment *nunc pro tunc* and payment, but the Fifth Circuit affirmed the district court's denial of the application, holding that "[w]e simply must note that considering the total circumstances of this case, counsel did not timely seek the relief he would now have the court order."

10

amounts of time by defense counsel. Second, as Justice Scalia noted in another context, "as originally understood," the Sixth Amendment guaranteed only the "right to employ counsel, or to use volunteered services of counsel. . . . We have held, however, that the Sixth Amendment requires the provision of counsel to indigent defendants at government expense." *Padilla v. Kentucky*, 559 U.S. 356, ---, 130 S. Ct. 1473, 1495 (2010) (Scalia, J., dissenting) (citations omitted). And, while "a lawyer's *pro bono publico* obligation was also meant to act as an incentive for attorneys to accept appointments under the CJA," *Mills v. United States*, 713 F.2d 1249, 1256 (7th Cir. 1983), "Congress's purpose behind instituting CJA compensation was to 'ease the financial burden' associated with providing these services which had been traditionally provided pro bono," *United States v. Mosley*, 779 F. Supp. 2d 398, 404 (D.N.J. 2011) (citing *Diaz*, 802 F. Supp. at 307).

Thus, the CJA was designed to reduce the reliance on volunteer and *pro bono* lawyers to satisfy the constitutional requirement of counsel for those accused of felonies in federal court. The statutory scheme recognized that, even though there is a strong public-service aspect in representing indigent criminal defendants, *Mosley*, 779 F. Supp. 2d at 403 (observing that "the purpose of the CJA is not to help attorneys profit, but to provide indigent defendants with adequate representation in the Federal

courts, and to provide 'reasonable compensation to counsel who are assigned' ") (quoting *In re Smith*, 586 F.3d 1169, 1175 (9th Cir. 2009)), the focus must be on the ability of the defendant to hire counsel and the compensation of the counsel who are appointed to represent those qualified for court-appointed counsel. *See United States v. Burnett*, 989 F.2d 100, 101 (2d Cir. 1993) (stating that in enacting the CJA, Congress recognized that "all defendants are entitled to help at every stage of a criminal proceeding and that a lawyer, like a laborer, is worthy of hire").  Thus, the Court rejects the government's argument that the availability of volunteer counsel precludes the appointment of CJA counsel.

The Court understands that Mr. Barnes's services, voluntary though they may be, constitute a value that places Brooks in a far more favorable position than the typical indigent defendant who seeks CJA counsel, because he or she does not have the benefit of the voluntary services of an experienced and renowned lawyer.  However, the Court also is concerned about the practical aspects of requiring a volunteer lawyer, even one as experienced as Mr. Barnes, to stay in the case if his current beneficence proves too burdensome even for him, or his other commitments cause undue delay of this case. This is all the more problematic because the undersigned will not be involved in the case after entry of this order, and the Court is uncomfortable deferring an easily

12

foreseeable problem to the judges actually assigned the case, especially when that problem, unsolved, is so likely to result in disruption of the representation and delay in the case.

Although not as compelling, another reason why Brooks is entitled to CJA counsel is the difficulty of the case, which justifies additional counsel in addition to volunteer counsel. While the government states that the case is not extremely difficult, the Court generally would expect the government to believe it has a strong case and that a defendant's guilt is straightforward and easily proven. To the contrary, while perhaps this case is not "extremely difficult" as fraud and tax cases go in this District, the scope of the allegations in the indictment, which span several years and claim numerous victims, including some well-known corporations, justifies the exercise of the Court's discretion under the CJA Plan, even where an additional lawyer is volunteering his services and resources. *See* CJA Plan § IV.C.1.

Finally, although any issues pertaining to a potential conflict of interest are deferred to Judge Scofield, who is the Magistrate Judge assigned to this case (primarily because the government has not moved to disqualify counsel at this point), a defendant may not " 'demand that a court honor his waiver of conflict-free representation,' and the Supreme Court has recognized a trial court's wide latitude in balancing the right to

13

counsel of choice against the needs of fairness . . . and against the demands of its calendar." *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006)); *Wheat v. United States*, 486 U.S. 153, 159-60 (1988); *id.* at 162-63 ("Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented . . . [and] the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."). Thus, if Mr. Barnes's role as general counsel for GABEO, one of the named victims in the indictment, constitutes one of those situations where a waiver of a conflict of interest is not accepted, then the presence of other counsel already in the case will minimize any delay in going forward.

As a result, having found that Brooks is not able to hire counsel, the Court concludes that he is entitled to court-appointed counsel despite the involvement of his volunteer lawyer. Under this Court's CJA Plan, there is a priority afforded to the Federal Defender Program, Inc., in this District. *See* CJA Plan, § VI.C. Accordingly, the Court **APPOINTS** the Federal Defender Program, Inc., to represent Brooks.

14

Subject to any ruling of the presiding judges on the conflict of interest issue, Mr. Barnes may continue to volunteer his services on Brooks's behalf if he so chooses; however, neither he nor his law firm may bill for legal services nor seek reimbursement for expenses in this case.

On the other hand, Brooks has not made the necessary showing entitling him at this time to expenses for investigative, expert, or other services under § 3006A(e)(1). Although in his motion he offers to make an *ex parte* showing to the Court in support of this request, that matter is best deferred to Judge Scofield, since he is responsible for managing the case prior to its being certified ready for trial.

*Conclusion*

For the reasons stated above, Defendant Brooks's motion for appointment of counsel and for expenses under the CJA, [Doc. 10], is **GRANTED IN PART AND DENIED IN PART**. Brooks's request for court-appointed counsel is **GRANTED**, and the Federal Defender Program, Inc., is **APPOINTED** to represent Brooks. Brooks's volunteer lawyer, Mr. Barnes, and his law firm, shall not bill for legal services nor seek reimbursement for expenses in this case. The request for investigative and expert services under 18 U.S.C. § 3006A(e)(1) is **DENIED WITHOUT PREJUDICE** subject

AO 72A
(Rev.8/82)

to Brooks's application to the Magistrate Judge responsible for pretrial matters in this case.

The Clerk is **DIRECTED** to serve a copy of this order upon Ms. Stephanie Kearns, Executive Director of the Federal Defender Program, Inc.

**IT IS SO ORDERED**, this   14th   day of   June   , 2013.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE